**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JERALD SELLS, # 18027-003, | * | |
| | * | |
|     Petitioner, | * | |
| | * | CRIMINAL NO. 20-00076-JB-B |
| vs. | * | CIVIL ACTION NO. 23-00096-JB-B |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
|     Respondent. | * | |

<u>REPORT AND RECOMMENDATION</u>

Pending before the Court is Petitioner Jerald Sells's amended motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Doc. 159). The motion has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts.[1] The undersigned has conducted a careful review of the record and finds that no evidentiary hearing is required for the disposition of this matter.[2] Following careful review and consideration, the undersigned recommends that Petitioner Sells's amended § 2255

---

[1] The undersigned has reviewed Petitioner Sells's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings in this case.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record. <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989).

motion be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Sells.  The undersigned further recommends that Petitioner Sells be **DENIED** a certificate of appealability and leave to appeal *in forma pauperis*.

## I.    BACKGROUND

On June 24, 2020, a federal grand jury in the Southern District of Alabama issued a two-count indictment charging Petitioner Jerald Sells ("Sells") with (1) aggravated sexual abuse with a child, in violation of 18 U.S.C. § 2241(c) (count one); and (2) transportation of a minor for criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (count two).  (Doc. 1).

Count one of the indictment alleged:

> In or about June 2018, in and outside the Southern District of Alabama, the defendant,

> **JERALD SELLS,**

> crossed a state line with intent to engage in a sexual act, as that term is defined in 18 U.S.C. § 2246(2), with a person who had not attained the age of 12 years.

> In violation of Title 18, United States Code, Section 2241(c).

(Id. at 1).

Count two of the indictment alleged:

> In or about June 2018, in the Southern District of Alabama, and elsewhere, the defendant,

> **JERALD SELLS,**

2

knowingly transported an individual who had not attained the age of 18 years in interstate and foreign commerce, with intent that such individual engage in sexual activity for which any person can be charged with a criminal offense.

In violation of Title 18, United States Code, Section 2423(a).

(Id. at 1-2).

The district court appointed CJA panel attorney Joe Carl Jordan ("Jordan") to represent Sells. (Doc. 7). Jordan filed multiple pretrial motions on Sells's behalf, including motions to dismiss counts one and two of the indictment.[3] Jordan asserted in those motions that both counts of Sells's indictment were due to be dismissed because the indictment was "insufficient, as a matter of law, to provide Defendant with proper constitutional notice of the charge against him and fail[ed] to state an offense" against Sells. (Doc. 24 at 1; Doc. 25 at 1). The motions to dismiss counts one and two of the indictment acknowledged: "The allegation, which [Sells] denies, involves one of his minor daughters." (Id.). The Government filed responses to the motions to dismiss, arguing

---

[3] In addition to the motions to dismiss counts one and two, Jordan filed the following pretrial motions on Sells's behalf: (1) "Motion for Pretrial Release and Motion to Declare Bail Reform Act of 1984 Unconstitutional" (Doc. 21); "Motion to Suppress Defendant's Statements as Obtained in Violation of Defendant's 4th Amendment Rights and as Being Made Involuntarily, Unknowingly, and/or Unintelligently" (Doc. 22); "Motion to Dismiss for Improper Venue" (Doc. 23); and "Motion for Leave [to File a Non-Party Subpoena for Documents to USA Midtown Pediatrics Center]" (Doc. 40).

that the charges presented in counts one and two met the requirements for a constitutionally sufficient indictment. (Docs. 38, 39). Sells filed replies to the Government's responses, reiterating his position that counts one and two were due to be dismissed "for failure to provide sufficient notice of the charges to the Defendant," and asserting for the first time that the indictment was deficient because it failed "to identify any predicate offenses committed by Defendant." (Docs. 52, 53). The Government filed a surreply to address this newly asserted ground and explained that an indictment charging violations of 18 U.S.C. §§ 2241(c) and 2423(a) is not required to identify a statutory predicate offense because neither statute requires a completed predicate offense. (Doc. 61 at 1-2). The Government further pointed out that:

> [T]he Defendant has received comprehensive discovery in this case, which includes the recorded statements of Victim 1 describing the various sexual acts that the Defendant performed on her. The discovery also includes recording of the Defendant confessing to performing various specific sexual acts on Victim 1. To claim that the Defendant does not have adequate notice of the criminal behavior he intended to commit is disingenuous. The discovery identified the acts that the United States has elected to prosecute . . . ."

(Id. at 4).

The district court denied both motions to dismiss, concluding that "both Counts One and Two provide the required notice under Rule 7(c) [of the Federal Rules of Criminal Procedure] and are

4

constitutionally sufficient." (Doc. 65 at 3). In reaching this conclusion, the district court explained that both counts "contain the correct statutory citations as well as language tracking the statutes themselves." (Id. at 2). Additionally, the district court noted that both counts "present all of the requisite elements of the charged offenses" and "feature the essential facts constituting the offense charged." (Id.).[4]

Sells elected to proceed to trial. Jury selection took place on September 28, 2020. (Doc. 144). Sells's jury trial began immediately following jury selection and concluded on September 29, 2020. (Docs. 145, 146). Sells did not testify at trial or present any evidence in his defense. (See id.). After hearing the evidence presented by the Government, counsel's closing arguments, and the Court's instructions on the applicable law, the jury deliberated and found Sells guilty of the offenses charged in counts one and two of the indictment. (Doc. 113). The district court denied motions for judgment of acquittal filed by Sells's counsel at the close of the Government's case, at the close

---

[4] The district court relied on several decisions issued by the Eleventh Circuit Court of Appeals as the basis for its ruling. (See Doc. 65 at 2 (quoting and/or citing United States v. Schmitz, 634 F.3d 1247 (11th Cir. 2011); United States v. Jordan, 582 F.3d 1239 (11th Cir. 2009); United States v. Wayerski, 624 F.3d 1342 (11th Cir. 2010); and United States v. Steele, 178 F.3d 1230 (11th Cir. 1999)).

of Sells's case, and following the jury's verdict. (Docs. 108, 109, 110, 112, 114).

Sells's sentencing hearing was held on January 11, 2021. (Doc. 147). The district court sentenced Sells to 480 months of imprisonment as to each of counts one and two, with the terms to run concurrently. (Doc. 133 at 2; Doc. 147 at 17). On January 19, 2021, Jordan filed a notice of appeal on behalf of Sells and moved to withdraw from representing Sells on appeal. (Docs. 131, 132). On January 22, 2021, the district court granted Jordan's motion to withdraw and appointed attorney William Keith Bradford to represent Sells on direct appeal. (Docs. 138, 139; see also Doc. 140). On December 20, 2021, the Eleventh Circuit Court of Appeals affirmed Sells's convictions. (Doc. 153). Sells did not seek rehearing en banc from the Eleventh Circuit and did not petition the United States Supreme Court for a writ of certiorari. (Doc. 159 at 2).

On March 14, 2023,[5] Sells, now proceeding without an attorney, filed an initial motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Doc. 156). Shortly thereafter,

---

[5] Under the mailbox rule, "a *pro se* prisoner's motion to vacate is deemed filed the date it is delivered to prison authorities for mailing." Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam). Sells's initial § 2255 motion states that it was placed in the prison mailing system on March 14, 2023. (Doc. 156 at 11-12).

6

Sells requested an additional ninety days to file an amended §
2255 motion, although he did not identify the nature of his planned
amendments.  (Doc. 157).  On March 28, 2023, the Court granted
Sells's motion for leave to amend in part, giving Sells leave to
file an amended § 2255 motion by May 12, 2023.  (Doc. 158).  Sells
timely filed the instant amended § 2255 motion and supporting
memorandum on May 10, 2023.[6]  (Docs. 159, 159-1).  The Government
filed a timely response to Sells's amended § 2255 motion.  (Doc.
164).  Sells timely filed a reply to the Government's response.
(Doc. 167).  Thus, Sells's amended § 2255 motion has been fully
briefed and is ripe for resolution.

## II.   LEGAL STANDARDS

### A. Habeas Standard

The limited scope of habeas relief is well established, as
this Court has recognized:

> Collateral relief is an extraordinary remedy which "may
> not do service for a[ ] [direct] appeal." United States
> v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed.
> 2d 816 (1982); see also Lynn v. United States, 365 F.3d
> 1225, 1232 (11th Cir. 2004) ("Courts have long and
> consistently affirmed that a collateral challenge, such
> as a § 2255 motion, may not be a surrogate for a direct
> appeal.").  A defendant who has waived or exhausted his
> right to appeal is presumed to stand "fairly and finally
> convicted."  Frady, 456 U.S. at 164.  Unless a claim
> alleges a lack of jurisdiction or constitutional error,

---

[6] Upon its filing, Sells's amended § 2255 motion (Doc. 159)
superseded his initial § 2255 motion (Doc. 156) and became his
operative pleading in this matter.

the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

**B. Ineffective Assistance of Counsel Standard**

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) counsel's poor showing prejudiced his defense because there is a reasonable probability that the result of the proceeding would have been different but for counsel's errors. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). The petitioner bears the burden of proving his claim of ineffective assistance of counsel, and he must meet his burden on both prongs to succeed. Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010). A court "need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citation omitted).

With regard to the first prong, the proper measure of attorney

8

performance is whether counsel's performance was objectively reasonable under prevailing professional norms considering all the circumstances. <u>Hinton v. Alabama</u>, 571 U.S. 263, 273 (2014) (per curiam). This judicial scrutiny is highly deferential, and courts adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. <u>Rose v. McNeil</u>, 634 F.3d 1224, 1241 (11th Cir. 2011); <u>Hall v. Thomas</u>, 611 F.3d 1259, 1290 (11th Cir. 2010).

To establish prejudice under the second prong of <u>Strickland</u>, it is not enough for the petitioner to show that the alleged errors "had some conceivable effect on the outcome of the proceeding." <u>Marquard v. Sec'y for Dep't of Corr.</u>, 429 F.3d 1278, 1305 (11th Cir. 2005) (quotation omitted). Rather, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

### III. <u>DISCUSSION</u>

In his amended § 2255 motion, Sells asserts three separate ineffective assistance of counsel claims. First, Sells asserts

that his trial counsel rendered ineffective assistance of counsel because he failed to challenge the sufficiency of the indictment based on the charging document's "fail[ure] to provide adequate notice of the factual basis of the charges."  (Doc. 159 at 4). Second, Sells asserts that his trial counsel rendered ineffective assistance of counsel because counsel failed to move for the dismissal of counts one and two of the indictment based on evidence showing that Sells transported his daughter with the intent to acquiesce in a request made by his wife rather than with the intent to engage in unlawful sexual activity.  (Id. at 5).  Third, Sells asserts that his trial counsel rendered ineffective assistance of counsel because he "failed to call [Sells] or anyone else as a witness."  (Id. at 7).  For the reasons set forth below, none of these claims have merit.

### A. Ground One: Failure to Challenge the Sufficiency of the Indictment

The first ground for relief raised by Sells is that his trial attorney, Jordan, was ineffective for failing to seek a dismissal of the allegedly deficient indictment.  (Doc. 159 at 4; Doc. 159-1 at 2-5).  According to Sells:

> Counsel failed to move for dismissal of the indictment. Counsel's failure resulted in a trial based on a constitutionally deficient charging document.  This is so because the charges, Count One and Count Two, do no more than track the language of the statutes and do not contain any facts that describe any specific conduct, thus fail to provide adequate notice of the factual basis

10

of the charges.  The two counts contain no particularity of time, place, or circumstance; nor do they describe in any way the alleged sexual acts.  The United States did not produce a valid indictment, thus violating constitutional protections.  Counsel's failure to object or move for dismissal of the indictment caused harm by permitting the United States to proceed with an indictment that was constitutionally deficient and should have been dismissed.

(Doc. 159 at 4; Doc. 159-1 at 2-3).

The foundation for Sells's first ground for relief is factually incorrect, because Jordan repeatedly moved for dismissal of the indictment on the grounds that it was legally insufficient. As outlined previously, Jordan filed separate motions to dismiss counts one and two of the indictment on the basis that: "The Indictment is insufficient, as a matter of law, to provide Defendant with proper constitutional notice of the charge against him and fails to state an offense against Defendant . . . ." (Doc. 24 at 1; Doc. 25 at 1).  The Government opposed both motions. (Docs. 38, 39).  In reply, Jordan again argued that counts one and two of the Indictment were "due to be dismissed for failure to provide sufficient notice of the charges to the Defendant." (Docs. 52, 53).  Jordan also added the additional ground that the indictment was deficient because it failed "to identify any predicate offenses committed by Defendant." (Id.).  The Government filed a single surreply addressing both of Sells's replies. (Doc. 61).  The Court denied Sells's motions to dismiss counts one

11

and two of the indictment on the merits.  (Doc. 65).  Undeterred, Jordan continued to raise the issue, specifically asserting as grounds for Sells's three motions for judgment of acquittal that, *inter alia*, the Government "has failed to allege and prove a crime was committed" and "has failed to allege and prove a specific predicate sexual act."  (Doc. 108 at 2; Doc. 109 at 2; Doc. 110 at 2).[7]  The Court denied these motions.  (Docs. 112, 114).

Based on the foregoing, Sells has mispresented his counsel's actions, as the record reflects that Jordan repeatedly sought dismissal of the indictment based upon its alleged insufficiencies.  Consequently, the undersigned recommends that Sells's first ground for relief be denied as Jordan did in fact challenge the sufficiency of the indictment; therefore, Sells has not satisfied the performance prong of the <u>Strickland</u> test.

Additionally and alternatively, the undersigned finds that Sells cannot establish the prejudice prong of the <u>Strickland</u> test because even if Jordan had failed to challenge the sufficiency of

---

[7] Sells's three motions for judgment of acquittal were "Judgment of Acquittal #1 Under Fed. R. Crim. P. 29 at Close of US Case" (Doc. 108); "Judgment of Acquittal #2 Under Fed. R. Crim. P. 29 At Close of Defendant's Case" (Doc. 109); and "Judgment of Acquittal #3 Under Fed. R. Crim. P. 29 After Jury Verdict" (Doc. 110). Although the multiple grounds set out in the three motions were not fleshed out in terms of discussion or supporting caselaw, the trial court's denial of the three motions was not based on the brevity of the motions, but, rather, on the merits.

the indictment, Sells would not have suffered any resulting prejudice since such a challenge would have failed. Indeed, it *did* fail, as Jordan moved for dismissal of the indictment on essentially the same grounds urged by Sells in ground one, and the district court determined that the indictment charging Sells was legally sufficient.

Moreover, Sells cannot show that he was prejudiced by his counsel's alleged omission because even if Jordan had succeeded in obtaining dismissal of the indictment based on its alleged lack of factual detail, the Government could have readily addressed any deficiencies found by the court by obtaining a superseding indictment. See Petersen v. United States, 2018 U.S. Dist. LEXIS 100352, at *23, 2018 WL 4677915, at *9 (S.D. Ala. May 16, 2018) ("Additionally, since any deficiency could have been easily cured by obtaining a superseding indictment after a motion to dismiss was filed, there can be no prejudice from counsel's failure to challenge the sufficiency of the indictment."), report and recommendation adopted, 2018 U.S. Dist. LEXIS 99859, 2018 WL 2981169 (S.D. Ala. June 14, 2018); Kozak v. United States, 2018 U.S. Dist. LEXIS 17350, at *11, 2018 WL 691642, at *4 (M.D. Fla. Feb. 2, 2018) ("Even if counsel's performance was deficient in failing to challenge the sufficiency of Count One, there was no possible prejudice. A successful motion to dismiss Count One would

13

simply have resulted in a superseding indictment setting forth the potential charge(s) with more specificity."); United States v. Lamere, 2006 U.S. App. LEXIS 3864, at *4, 2006 WL 378240, at *2 (9th Cir. Feb. 17, 2006) ("Even if we were to find counsel's decision not to object to be unreasonable, it was not prejudicial: had a motion to dismiss the indictment been made and granted, the government could readily have brought a superseding indictment."); Myles v. United States, 2018 U.S. Dist. LEXIS 144384, at *30, 2018 WL 4052241, at *8 (W.D.N.C. Aug. 24, 2018) ("Moreover, Petitioner cannot demonstrate prejudice because any deficiency [by defense counsel in failing to move to dismiss first count of indictment] could have been addressed through a statement of particulars or superseding indictment; there is no reasonable probability that Count (1) would have been dismissed even if counsel had filed a motion to dismiss.").[8]

For the foregoing reasons, Sells's first ground for relief claiming that his trial counsel was ineffective for failing to move to dismiss the indictment as legally insufficient is due to be denied.

---

[8] Indeed, although Sells contends that the indictment against him was constitutionally insufficient, he acknowledges that the "United States could have prepared an indictment that met the constitutional requirements[.]" (Doc. 167 at 3).

**B. Ground Two: Failure to Challenge the Evidence Supporting
the Element of Intent**

As his second ground for relief, Sells alleges that his trial
counsel was ineffective for failing to seek dismissal of both
counts of the indictment based on insufficient evidence of intent.
(Doc. 159 at 5; Doc. 159-1 at 6-10).  According to Sells:

> Counsel failed to move for dismissal of both counts.
> Counsel's failure resulted in convictions based on
> inadequate or non-existent evidence.  The statutes named
> in both counts include "intent" as an element.  The point
> being this: My wife requested that I take my daughter on
> the road with me for the purpose of creating an
> opportunity for my wife to devote proper attention to
> our other daughter's problems.  The statues clearly use
> the word "intent" in their language.  Whatever happened,
> there was no "transportation with intent . . ."
> Counsel's deficient performance created harm by
> permitting convictions where the United States failed to
> carry its burden of producing evidence beyond a
> reasonable doubt.  Both counts must be dismissed.

(Id.).

As noted previously, Sells was charged with and convicted of
violating 18 U.S.C. §§ 2241(c) and 2423(a).  The offense of
aggravated sexual abuse under 18 U.S.C. § 2241(c) "requires proof
of the following two elements: (1) interstate travel (2) with the
intent to engage in a sexual act with a minor."  Forrester v.
United States, 349 F. App'x 528, 531 (11th Cir. 2009) (per curiam).
"The Eleventh Circuit pattern jury instruction for this offense
describes two elements: '(1) the Defendant crossed a State line
with the intent to engage in a sexual act; and (2) the [victim]

15

was less than 12 years old.'" <u>United States v. Schumaker</u>, 2011 U.S. Dist. LEXIS 161701, at *2-3, 2011 WL 13192684, at *1 (N.D. Ga. Mar. 24, 2011), <u>aff'd</u>, 479 F. App'x 878 (11th Cir. 2012).

"To prove a violation of 18 U.S.C. § 2423(a), the government must show: (1) the defendant knowingly transported the victim in interstate commerce, (2) the victim was under 18, and (3) the defendant intended to engage in criminal sexual activity with the minor." <u>United States v. Gonzalez</u>, 2023 U.S. App. LEXIS 11594, at *6, 2023 WL 3376578, at *3 (11th Cir. May 11, 2023) (per curiam) (emphasis added). "While the government need not prove that actual sexual activity took place to prove intent to engage in criminal sexual activity, a defendant's intent may be bolstered by evidence that he engaged in sexual activities with the minor after crossing state lines." <u>Id.</u>, 2023 U.S. App. LEXIS 11594, at *6-7, 2023 WL 3376578, at *3.

To establish intent for the purpose of these offenses, the Government must "prove that [the defendant's] motive or purpose for traveling (the § 2241(c) offenses) and for bringing the [victim] along on the [trip] (the § 2423(a) transport offenses) was to sexually abuse [her]." <u>United States v. Doak</u>, 47 F.4th 1340, 1354 (11th Cir. 2022).

Sells claims that his counsel was ineffective for "fail[ing] to move for dismissal of both counts" based on a lack of evidence

that Sells possessed the requisite intent to commit the §§ 2241(c)
and 2423(a) offenses.  (Doc. 159 at 5; Doc. 159-1 at 6).  As an
initial matter, however, the Court notes:

> There is no summary judgment procedure in criminal
> cases. Nor do the rules provide for a pre-trial
> determination of sufficiency of the evidence. . . . The
> sufficiency of a criminal indictment is determined from
> its face.  The indictment is sufficient if it charges in
> the language of the statute.

United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per
curiam).  In other words, "a defendant's claim of insufficiency of
the evidence is not a basis for dismissal of an indictment."
United States v. Ochei, 2022 U.S. Dist. LEXIS 91562, at *5, 2022
WL 1609440, at *2 (N.D. Ga. May 2, 2022), report and recommendation
adopted, 2022 U.S. Dist. LEXIS 91534, 2022 WL 1606451 (N.D. Ga.
May 20, 2022).  Thus, to the extent Sells claims that his counsel
was ineffective for failing to move for dismissal of the indictment
based upon a pretrial determination of the sufficiency of the
evidence of intent, his claim is without merit.

Furthermore, the Court reiterates that Sells's counsel did
file pretrial motions to dismiss counts one and two of the
indictment as "insufficient, as a matter of law, to provide
Defendant with proper constitutional notice of the charge against
him" and for failing "to state an offense against Defendant."
(Docs. 24, 25).  Sells appears to contest the sufficiency of the
evidence regarding his intent to commit the charged offenses, but

17

he offers no authority to support his suggestion that additional facts supporting the element of intent were required in the indictment itself. Indeed, Sells fails to explain what more he believes was required in the indictment to sufficiently allege intent. Therefore, to the extent Sells alleges that his counsel was ineffective for not specifically challenging the sufficiency of the "factual basis describing the alleged intent" in the indictment, he is entitled to no relief.

To the extent Sells complains that his counsel was ineffective for failing to challenge the sufficiency of the evidence presented at trial relating to the element of intent, his claim fails because it is based on a demonstrably false premise. Contrary to Sells's suggestion, his attorney specifically challenged the sufficiency of the evidence presented by the Government relating to the element of intent. Indeed, it was *the* central component of Sells's defense.

For example, after the Government rested its case and the defense elected not to present any evidence, Jordan moved for a judgment of acquittal, partly on the following grounds: "The US has failed to prove by a sufficiency of the evidence that Defendant crossed the State line with the intent to engage in a sexual act (i.e. that Defendant took minor #1 on a work trip to have sex with the minor);" "The US has failed to prove that Defendant's criminal

purpose was not merely incidental to travel;" "The US has failed
to prove that at the time of the transportation, the Defendant
intended that the minor would engage in sexual activity;" "The US
has failed to prove that the purpose of the travel was to engage
in illicit sexual activity;" "Guilt under the Mann Act turns on
the purpose which motivates the transportation.  The US has failed
to prove beyond a reasonable doubt the elements of Count 1 and
Count 2.  The purpose that motivated Defendant's transportation
was his employment as a cross country truck driver and picking up
and delivering product in interstate travel to earn a living;"
"The US has failed to prove that the sex act was the dominant
purpose for travel.  US v. Vang, 128 F.3d 1065, 1070-72 (9th Cir.
1997)."  (Docs. 108, 109).  The district court denied the motions
for acquittal.  (Doc. 112; Doc. 146 at 81-82).

Subsequently, in his closing argument, Jordan focused almost
entirely on the issue of intent:

> **Now, I submit to you the United States has not met its
> burden of proof beyond a reasonable doubt of every
> element that they have to prove in this case.  And that
> the key element is the one she circled because she knows
> she's got a problem with it.  The intent.**
>
> In other words, Mr. Sells had to go out of state because
> he wanted to have sex with his daughter out of state.
> That's what they have to prove; that when he crossed
> that state line, he was going there to have sex with his
> daughter.  That's the law.  That's why it's a U.S. crime
> because supposedly, or their allegation, what they have
> to prove is, hey, he was all -- he was going across state
> line to have sex with his daughter.

19

Well, we know -- and I hate to say this because it's the truth. He didn't have to go across state lines. He didn't have to take his daughter across state lines because we know that since she was five or six, he did it at his house. And all that stuff, everything they said, everything -- all that about the house and all those things – that's not a crime involving U.S. law. That's a different courthouse. That doesn't involve United States courthouse and United States law.

The most important exhibit in this case is . . . Mr. Sells' travel log. That travel log is going to show -- it is about 21 pages. It shows about 828 trips across state lines. That was his job. That was employment. The reason he was going across state lines was to make money. To make money to support his wife of about 33 years; to support his youngest daughter who, yes, he had abused; to support his oldest daughter who you heard her testify no allegation of abuse. That's why he crossed the state lines.

Now, if he had not been a truck driver on the job and took his daughter across state lines in his private vehicle to have sex with her, that would be different. And what's more important, you know, that June of 2018 – that's the event she told you about. That's one of the elements. June of 2018, he went up to -- all the way up to Ohio. No allegation of any abuse. Went to Armstrong which is a company that he was dropping off or picking up a load for, coming back down. And under U.S. law, he had to stop. He had to stop at a rest stop to sleep because that's the law because he had gone over his driving quota.

So out of 828 trips, we have one trip of June of 2018 where on the way back when he stopped to sleep, his daughter climbed up to the top bunk, was tickling his feet, and he did the wrong thing. He said, I did it. He admitted to it. You saw him with the police. I knew it was wrong. It was brief. Lasted about a minute and I stopped. And that was the entire event. One time. And the reason that she was even on the trip at all was because she was out of school for the summertime.

Remember I said, well, did you ever have any incidents

20

where he actually took her out of school and took her on
a road trip with him on his job? No. One time in June
of 2018 on -- in summer, out of school, and she went on
a trip. And it's on the way back. **The whole point of
that is that it wasn't planned. It wasn't planned. It
wasn't intended. That's what the U.S. has to prove
beyond a reasonable doubt.**

Out of 828 trips, you have one trip in the summer of
2018 and they're going to say, oh, the only reason – you
know, the reason he took her was to have sex with her.
That doesn't make sense, and that's not a fair evaluation
of the evidence.

Now, that oath you took requires you -- okay. All these
bad things he did belong in another courthouse. June of
2018, that incident, one out of 828 trips on his job –
he was going across state lines because of his work
requirement. Because that's where his employment took
him. Nothing happened on the way back. It happened on
the way -- I mean, on the way up. It happened on the
way back when he stopped at a truck stop to sleep because
he's required to. I submit if he had just kept driving
through, if he hadn't stopped to sleep, we wouldn't be
here. That incident wouldn't have occurred. But he did
stop to sleep. **It wasn't planned. It wasn't intended.
When he took off on that trip to drop off that stuff at
Armstrong, he was not planning or intending to have sex
with his daughter.**

And I submit to you, ladies and gentlemen, if you hold
the United States to its required burden of proof, beyond
a reasonable doubt, those are facts that they -- 828
trips. Job requirement. Drive. He was a commercial
truck driver. 828 times that he went up there without
his daughter. One time with his daughter on the way
back because she went because she was out of school for
the summer. And he did wrong. He did wrong. But that
wasn't his intent when he went out on the job.
Otherwise, you have him taking up there 50, 60 times on
a trip – that's not the case.

Now, it's going to be hard as a juror to separate the
two. Because you took an oath that you may not agree
with that law. You may not agree that the only reason
this is in this courthouse is because you had to travel

with the intent to have sex with her when you left.  When you crossed that state line, that was your intent; that was your plan; that was your motive; that was your purpose; that's what you were going for.  And I think when you evaluate in evidence in totality, that's not a fair evaluation of the evidence.  You know, because on the one hand, you're going to hate – you're going to hate him.  You're going to despise him because of all the stuff he did in Alabama in Grand Bay at his residence.

But that's a different courthouse.  We're here in a United States courthouse.  **We're here for United States law.  And what makes it a United States law is crossing a state line with the intent.  You planned it.  You wanted to have sex.  That's why you crossed that state line.  The reason you crossed that state line was to have sex with his daughter.  And that's not the case in this case.**

It is a difficult duty as a juror. But the reason you were all selected is because you promised that you could, even if you disagree with the law -- that you could still apply the law versus your own personal opinion.  Because, you know, all your personal opinions -- personal opinion is let's just convict him and get out of here.  He already admitted to all that abuse at his home in Grand Bay.  **He admitted to the abuse in Grand Bay but he never said -- never said no; I took her out of state because I wanted to have sex with her.  No.  That was never part of the question.  Never even asked him that question.  Because the sheriff's office knew why he went out of town.  He was a commercial truck driver.**

I'm glad this -- when you go back there, please study this.  Please look at this.  Look at the 21 pages.  **828 trips.  827 trips she was not on the trip.  One trip on the way back stopped at a rest stop because he had to sleep.  And it wasn't planned.  It happened.  He admitted it.  But he didn't plan it ahead of time.  He didn't intend for it to happen.  He knew it was wrong.  He stopped it.  Stopped it too late.  He did.  But that's another courthouse on another day.**

(Doc. 146 at 98-102 (emphasis added)).

22

After the jury rendered a verdict of guilty on both counts, Jordan filed yet another unsuccessful motion for judgment of acquittal which asserted the same challenges to the sufficiency of the evidence of intent as were asserted in the earlier motions for acquittal. (Doc. 110). Thus, Sells is patently incorrect to the extent he suggests that Jordan failed to challenge the sufficiency of the evidence relating to the "intent" element of the charged offenses.

Finally, Sells is entitled to no relief with respect to his assertion that Jordan was ineffective for failing "to question the legitimacy of . . . the jury instructions in any way" as they related to the element of intent. (See Doc. 159-1 at 10). Contrary to Sells's suggestion, Jordan objected to the Government's proposed jury instructions even though he recognized that they substantially mirrored the Eleventh Circuit's pattern jury instructions for the charged offenses. (Doc. 146 at 84). Jordan also submitted proposed jury instructions that set forth the law with regard to intent *as he contended it should be*. (Doc. 106 at 1; Doc. 107 at 1; Doc. 146 at 83-84). The district court found that "the government's proposed instruction accurately states the law as it exists now" and proceeded to give that instruction rather

than the one proposed by Sells's counsel.[9] (Doc. 146 at 85, 112-15). Given that Jordan objected to the language in the Government's proposed jury instructions, which were given by the district court, and also submitted proposed jury instructions containing element of intent language that was more favorable to the defense, Sells cannot show that his counsel was ineffective for failing to "question the legitimacy" of the jury instructions.[10]

---

[9] As relevant here, the jury instruction proposed by Sells for the § 2241(c) offense stated, in part: "The Government must show that the intent to engage in a sexual act was the primary motive or purpose for the defendant's travel. In other words, the Government must show that the defendant's criminal purpose was not merely incidental to the travel." (Doc. 107 at 1). In contrast, the Government's proposed jury instruction for the § 2241(c) offense stated: "It doesn't matter whether the Defendant's sole or even primary purpose in crossing the state line was to engage in a sexual act with a person under the age of 12. The Government must show that the intent was at least one of the motives or purposes for the Defendant's travel. In other words, the Government must show that the Defendant's criminal purpose was not merely incidental to the travel." (Doc. 81 at 71). Over the objection of Sells's counsel, the Court gave the jury the instruction proposed by the Government: "It doesn't matter whether the defendant's sole or even primary purpose in crossing the state line was to engage in a sexual act with a person under the age of 12. The government must show that the intent was at least one of the motives or purposes for the defendant's travel. In other words, the government must show that the defendant's criminal purpose was not merely incidental to the travel." (Doc. 146 at 84-85, 113).

[10] Clearly, the mere fact that Jordan was unsuccessful in persuading the court to deviate from the Eleventh Circuit's pattern jury

Based on the foregoing, Sells has clearly failed to establish that his counsel performed deficiently by failing to move for dismissal of the indictment based on insufficient allegations or evidence of intent, by failing to challenge the sufficiency of the evidence presented at trial regarding Sells's motive or purpose for traveling across state lines and for bringing his daughter along on the trip, or by failing to "question" the jury instructions with respect to the element of intent. Accordingly, Sells's second ground for relief is due to be denied.

**C. Ground Three: Failure to Call Defense Witnesses**

As his third and final ground for relief, Sells claims that his trial counsel was ineffective for failing to call witnesses to testify on behalf of Sells at trial. (Doc. 159 at 7; Doc. 159-1 at 10-14). Sells states:

> Counsel failed to call me or anyone else as a witness. Counsel's failure resulted in the testimony produced by the United States' witnesses to stand unopposed. By calling defense witnesses, including myself, to testify in my behalf and to rebut testimony of prosecution witnesses, the jury could well have come to a different verdict. The verdict might have been the same but any prediction as to the outcome of the trial is no more than speculation. To say that my lawyer kept me (or anyone else) from testifying because it was trial strategy is also speculation. At the very least, a

---

instructions does not equate to constitutionally deficient performance. See Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) ("We have long held that the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel.").

hearing is necessary in order to make any attempt at predicting the outcome of a new trial.

(Doc. 159 at 7; Doc. 159-1 at 10-11).

"'[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Miranda v. United States, 433 F. App'x 866, 869 (11th Cir. 2011) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978));[11] see also Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (stating that speculation regarding the testimony of missing witnesses "is 'insufficient to carry the burden of a habeas corpus petitioner'") (citation omitted). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). To show that his attorney's conduct was unreasonable, Sells must demonstrate "that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000).

---

[11] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

26

The burden to satisfy Strickland's prejudice prong "is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'" Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006) (citation omitted).  The Eleventh Circuit has held that, absent a proffer of evidence, a petitioner cannot show prejudice based on his counsel's failure to introduce certain testimony. See Hill v. Moore, 175 F.3d 915, 923 (11th Cir. 1999). Moreover, if a petitioner complains of counsel's failure to obtain witnesses, he must "show that witnesses not presented at trial actually were available and willing to testify at time of trial." Gilreath v. Head, 234 F.3d 547, 551 n.12 (11th Cir. 2000) (citing Horsley v. State of Ala., 45 F.3d 1486, 1494-95 (11th Cir. 1995)).  Thus, to establish ineffective assistance of counsel based on the failure to call a witness, a "petitioner must prove both (1) the substance of the witness's missing testimony and (2) the availability of the witness." Louis v. United States, 2014 U.S. Dist. LEXIS 145773, at *12, 2014 WL 5093850, at *5 (M.D. Fla. Oct. 10, 2014).

Sells offers several examples of "rebuttal testimony" his attorney could have offered to counter the evidence presented by the Government.  First, Sells asserts that Jordan "should have sought expert testimony" to challenge or rebut testimony given by

27

Government's expert witness, Dr. Jessica Kirk, "which indicated that [Sells's] daughter's hymen had been ruptured but then repaired itself." (Doc. 159-1 at 11). However, at no point in her testimony did Dr. Kirk indicate that Sells's daughter's hymen had been ruptured and subsequently repaired itself. On the contrary, Dr. Kirk testified that the hymen is generally "open from birth" and called it an "[u]rban myth" that "the hymen is actually a covering that breaks the first time it interacts with something, like, maybe they have an injury or the first time they have sex." (Doc. 146 at 66). Sells's counsel did not perform deficiently by failing to challenge non-existent testimony.

Dr. Kirk also testified that her physical examination of Sells's daughter was within normal limits and revealed no vaginal or anal lacerations, tears, scars, or bruising. (Id. at 71-73, 76-77). Dr. Kirk testified that these results were not necessarily inconsistent with Sells's daughter's allegations of sexual abuse (for reasons she set forth earlier in her testimony),[12] but she

---

[12] Dr. Kirk explained that the tissue of a hymen is "typically not damaged by sexual intercourse"; that it is "possible for an adult man to have penetrative vaginal sex with a child and there not be any vaginal injury"; that "between 95 and 100 percent of vaginal injuries will heal within 72 hours"; that "95 percent of sexual abuse victims have normal exams because a majority of them are examined outside that 72-hour window after they heal"; that an examination performed "on an individual who reports abuse that

acknowledged on cross-examination that they also did not necessarily support Sells's daughter's allegations. (Id. at 73-74). Sells has not proffered testimony from any expert witness that would call Dr. Kirk's conclusions into question, nor has he shown that his counsel could have found an expert witness who would have contradicted Dr. Kirk's testimony. More fundamentally, Sells has not shown how his counsel's failure to obtain and present a rebuttal expert prejudiced him, given the evidence presented to the jury showing that Sells admitted to sexually abusing his daughter.

Second, Sells suggests that his counsel should have called his wife to testify "that she had seen no blood on [their] daughter's undergarments." (Doc. 159-1 at 12). However, there is no reasonable probability that such testimony would have been sufficient to overcome the weight of the evidence against Sells. Indeed, even if Sells is correct that his wife would have testified that she observed no blood on their daughter's undergarments, this had no reasonable prospect of negating the evidence of abuse, particularly Sells's own recorded admissions that he sexually

---

happened weeks or months prior" has "a less than five percent chance of having an injury seen at that time"; and that in the event of an injury caused by sexual intercourse, there would not "necessarily be any scarring or any remnants of the injury" because scarring "is rare in that type of tissue." (Doc. 146 at 66-70).

abused his daughter.

Third, Sells faults his counsel for advising him not to testify and thereby preventing him from having the opportunity "to affirmatively deny the accusations against [him]." (Id. at 13-14). Sells alleges that his counsel "told [him] not to testify and to sit as stoically as possible," and that he "acted as instructed and, in the end, was severely criticized by the judge for [his] efforts." (Id.). Sells also states: "As for the testimony of the neighbor victim, her testimony is false and has a simple explanation." (Id. at 14).

A criminal defendant has a "fundamental constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc).

> Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide. This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an intentional relinquishment or abandonment of a known right or privilege. Moreover, if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify. The defendant can then make the choice of whether to take the stand with the advice of competent counsel.

Id. at 1533 (internal quotation marks, citation, and footnotes

omitted).  In <u>Teague</u>, the court reasoned that an attorney's performance would be deficient under the first prong of the <u>Strickland</u> test if counsel refused to accept the defendant's decision to testify and would not call him to the stand, or if defense counsel never informed the defendant of the right to testify and that the ultimate decision belonged to the defendant. <u>Id.</u> at 1534.  However, the Eleventh Circuit rejected Teague's ineffective assistance of counsel claim because the trial court found (not clearly erroneously) that counsel had advised Teague of his right to testify and advised him that he should not exercise that right, and Teague did not protest.  <u>Id.</u> at 1535.

In this case, there is no question that Sells was aware of his right to testify, that he discussed it with his attorney, that Sells's attorney advised him not to testify, and that Sells decided to heed his attorney's recommendation.  Moreover, during the trial, the district court conducted a colloquy with Sells concerning his right to testify, and Sells acknowledged that it was his decision not to testify.  (<u>See</u> Doc. 146 at 82-83).

To the extent Sells contends that his attorney's advice not to testify was unreasonable, his contention is without merit.  When a court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance without an evidentiary hearing." <u>Gordon v. United States</u>, 518 F.3d 1291,

31

1302 (11th Cir. 2008); <u>see also</u> <u>Teague</u>, 953 F.2d at 1533 n.9
("There are good tactical reasons why it may not be best for the
defendant to testify in some circumstances.  Some examples might
be if the defendant might provide evidence of missing elements of
the crime on cross-examination, if the defendant might be
prejudiced by revelation of prior convictions, or if the prosecutor
might impeach the defendant using a prior inconsistent
statement.").  There were obvious tactical or strategic reasons
for Jordan's advice that Sells not testify.  First, counsel was
clearly justified in believing that it would be unhelpful at best
(and very possibly harmful) for Sells to take the stand to
"affirmatively deny the accusations" against him, given the fact
that Sells had already admitted to sexually abusing his daughter.
<u>See, e.g.</u>, <u>Hayes v. Sec'y, Dep't of Corr.</u>, 2019 U.S. App. LEXIS
17106, at *6, 2019 WL 6249274, at *2 (11th Cir. June 6, 2019)
(concluding that habeas petitioner "failed to show prejudice
regarding any advice not to testify on his own behalf, because
exculpatory testimony would have conflicted with his recorded
statement and would not have been credible").  Second, it is
apparent that Jordan's primary defense strategy was to challenge
the weakest element of the Government's case by attacking the
sufficiency of the Government's evidence that one of the purposes
or motives for Sells to cross state lines and to bring his daughter

along with him on his interstate work trip was to engage in sexual activity with her.  It was more than reasonable for Jordan to conclude that Sells's proffered testimony (denying the accusations against him in the face of his prior admissions and explaining why the testimony of the "neighbor victim" was false) would do nothing to further this defense strategy and might very possibly jeopardize it by damaging Sells's credibility and potentially allowing the Government to adduce evidence of intent on cross-examination. Accordingly, Sells has failed to demonstrate that his attorney rendered constitutionally deficient performance by advising him not to testify, nor has he shown a reasonable probability of a different outcome had he testified.

For the foregoing reasons, Sells's third and final ground for relief is due to be denied.

### IV. <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**.  <u>See</u> Rules Governing § 2255 Proceedings, R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge

issues a certificate of appealability.  See 28 U.S.C. § 2253(c)(1).
A certificate of appealability may be issued only where "the
applicant has made a substantial showing of the denial of a
constitutional right."  Id. at § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds
without reaching the merits of an underlying constitutional claim,
a certificate of appealability "should issue [only] when the
prisoner shows, at least, that jurists of reason would find it
debatable whether the petition states a valid claim of the denial
of a constitutional right and that jurists of reason would find it
debatable whether the district court was correct in its procedural
ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  When a
habeas petition is denied on the merits of the underlying
constitutional claims, a certificate of appealability may issue
only when the petitioner demonstrates "that reasonable jurists
would find the district court's assessment of the constitutional
claims debatable or wrong."  Id. at 483-84 ("To obtain a COA under
§ 2253(c), a habeas prisoner must make a substantial showing of
the denial of a constitutional right, a demonstration that . . .
includes showing that reasonable jurists could debate whether (or,
for that matter, agree that) the petition should have been resolved
in a different manner or that the issues presented were adequate
to deserve encouragement to proceed further.") (citation and

34

internal quotation marks omitted); <u>accord</u> <u>Miller-El v. Cockrell</u>,
537 U.S. 322, 336 (2003).

After reviewing the issues presented in light of the
applicable standards, the undersigned concludes that reasonable
jurists would not find the Court's disposition of Sells's claims
wrong or debatable, and that none of the issues presented are
adequate to deserve encouragement to proceed further. As a result,
Sells is not entitled to a certificate of appealability and should
not be permitted to proceed *in forma pauperis* on appeal.

## V. <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that Petitioner
Jerald Sells's amended motion under 28 U.S.C. § 2255 to vacate,
set aside, or correct his sentence (Doc. 159) be **DENIED**, that this
action be **DISMISSED with prejudice**, and that judgment be entered
in favor of Respondent, the United States of America, and against
Petitioner Sells. It is further recommended that any requests for
a certificate of appealability or for permission to appeal *in forma
pauperis* be **DENIED**.

### <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on
all parties in the manner provided by law. Any party who objects
to this recommendation or anything in it must, within fourteen
(14) days of the date of service of this document, file specific

written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **9th** day of **February, 2026.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**